*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re Guardianship of RH.

DELWAR HUSSAIN, Guardian of RH,

        Appellant,

v

ASAB UDDIN,

        Appellee.

UNPUBLISHED
April 22, 2025
10:13 AM

No. 372584
Macomb Probate Court
LC No. 2023-247631-GM

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Appellant, as guardian of RH, appeals as of right the probate court's opinion and order denying in part his motion for special findings of fact to apply for special immigrant juvenile (SIJ) status for RH with the United States Citizenship and Immigration Services (USCIS), under 8 USC 1101(a)(27)(J). We vacate the probate court's opinion and order and exercise our discretion to find by a preponderance of the evidence that: (1) RH's reunification with his father and stepmother is not viable because of abuse and neglect, and (2) RH's best interests would not be served by returning to Bangladesh.

## I. FACTS

In 2006, RH was born in Bangladesh to appellee, Asab Uddin (father), and Raka Begum (mother). In 2018, when RH was 12 years old, RH's mother passed away. RH's father was unable to provide RH and RH's older brother with adequate clothing and food. As a result, RH began performing agricultural work on a farm when he was 12 years old. In 2021, RH's father married RH's stepmother. When RH was 16 years old, he traveled with a group to the United States. In or about May 2023, RH arrived in the United States and contacted appellant who was a friend of RH's family and from the same village in Bangladesh. On May 31, 2023, RH was released to appellant's care by the United States Office of Refugee Resettlement, and a verification of release

-1-

form was issued. Since his release, RH resided at appellant's home, attended school, and had his basic needs met.

In December 2023, when RH was 17 years old, appellant filed a petition requesting to be appointed guardian of RH. In February 2024, the probate court granted the petition and appointed appellant as RH's full guardian. Two days later, appellant moved for special factual findings to allow appellant to apply for SIJ status for RH with USCIS. The requested findings included the following: (a) RH was under 21 years old; (b) RH was unmarried; (c) RH was "dependent upon the Probate Court because he is an unaccompanied minor in the United States"; (d) RH was eligible for long-term foster care; (e) reunification with RH's father was not viable because of abuse and neglect; (f) reunification with RH's stepmother was not viable because of neglect; and (g) it was not in RH's best interests to return to Bangladesh.

In March 2024, the probate court held a hearing, at which RH testified about his difficulties living in Bangladesh and his travel to the United States. After RH's mother died, RH's father and stepmother did not provide RH with adequate food or clothing in Bangladesh. RH performed "heavy" agricultural work on a farm and was forced to give his earnings to his father. When RH refused to work, or tried to keep his earnings, RH's father yelled at RH and hit him; this occurred about seven times monthly. When RH was 16 years old, he contacted his maternal uncle, Mojnu,[1] and described his hardship. Mojnu paid for RH's plane ticket and arranged a travel group to the United States. RH traveled "by air, then ship, . . . then in the jungle, walking, going through the jungle." RH had "little money for food" during his travels, but he "survived [as] much as [he] could." After RH landed in an unknown country, it took about one year to reach the United States. Since living in the United Stated, RH had only spoken to his father twice.

The probate court questioned appellant about RH's arrival in the United States. Appellant stated that RH crossed the border in "Arizona or Texas" with a group, and appellant was thereafter contacted by "immigration." Appellant testified that he did not know how RH bought his plane ticket. The probate court asked how RH received appellant's phone number, to which appellant responded, "[A] lot of people got my phone number [] back home . . . for like helping."

At the end of the hearing, the probate court took "this matter under advisement." In September 2024—two days after RH turned 18— the probate court issued an opinion and order granting the motion in part "with respect to [RH] being [18] years old, physically present in the United States and the subject of a juvenile court order," but the motion was denied "in all other aspects."

Appellant now appeals.

## II. STANDARD OF REVIEW

"We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying its

---

[1] Mojnu's last name was not included in the record.

-2-

decision." *In re Velasquez*, 344 Mich App 118, 127; 998 NW2d 898 (2022). "A court abuses its discretion if it chooses an outcome outside the range of reasonable and principled outcomes. The probate court necessarily abuses its discretion when it makes an error of law." *Id*. (quotation marks and citations omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation mark and citation omitted). We defer "to the probate court on matters of credibility and give[] broad deference to findings of fact made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily ascertainable to the reviewing court." *Id*. "[B]ecause the SIJ statute does not state the applicable standard of proof to be applied for factual findings, [this Court has] conclude[d] that the preponderance-of-the-evidence standard applies." *Id*. at 135.

III.  ANALYSIS

On appeal, appellant argues that the probate court erred by: (1) finding that RH was not a credible witness, (2) disregarding RH's affidavit, and (3) failing to make the second and third special factual findings pertinent to RH's SIJ status. Appellant contends that the record is sufficient for this Court to exercise its discretion and make the missing findings. We agree.

A. THE LEGAL PROCESS FOR OBTAINING SIJ STATUS

In *In re Velasquez*, 344 Mich App at 128-129 (alterations in original; quotation marks and citations omitted), this Court succinctly explained the process for obtaining SIJ status as follows:

> The Immigration and Nationality Act of 1990 established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States. In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2022) afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States.
>
> There is a two-step process for obtaining SIJ status, which entails a unique hybrid procedure that directs the collaboration of state and federal systems. *First, the state court makes predicate factual findings pertinent to the juvenile's SIJ status. The state court must find that the individual who seeks SIJ status is under the age of 21, unmarried, and (1) dependent on the juvenile court, (2) cannot viably be reunified with one or both of their parents because of neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's best interests would not be served by returning to their country of origin.* The findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states, and are made according to state law. The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a juvenile court. However, the state court is not to engage in an immigration analysis or decision. . . . Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. . . . After the state court makes the

predicate findings, the juvenile applies to the USCIS for SIJ status. The USCIS engages in a much broader inquiry than state courts, and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted. [Emphasis added.]

## B. THE PROBATE COURT'S FINDINGS

In this case, concerning the first special factual finding pertinent to RH's SIJ status—whether RH was dependent on a juvenile court—it is undisputed that the probate court found that RH was under 21 years old, present in the United States, and subject to a juvenile court order. See *id*. at 128. The record established by a preponderance of the evidence that RH was dependent on the probate court after it appointed appellant as RH's guardian. This finding is not at issue on appeal.

Concerning the second and third special factual findings pertinent to RH's SIJ status—whether reunification with one or both of RH's parents was viable considering the topics of neglect and abandonment, and whether RH's best interests would be served by returning to Bangladesh—the probate court declined to make any findings. See *id*. Instead, the probate court found that appellant's testimony "was mostly based on inadmissible hearsay," and "[t]he remainder was evasive and not credible." Similarly, the probate court found that RH's testimony was "evasive and not credible," explaining that: (1) RH "could not provide a satisfactory explanation of his travels" to the United States, and (2) RH's descriptions of life in Bangladesh were "vague" and "seemed to be creations of fiction rather than factual recollections." The probate court also stated that it did not consider RH's affidavit because it contained "mostly conclusions rather than facts" and failed to comply with MCR 2.119(B)(1) and MCR 1.109(D)(3)(b). The probate court further stated that because RH "recently turned [18] years old," and was therefore "now of legal employment age in Bangladesh," his "arguments against returning to Bangladesh based on forced child labor practices [were] moot." The probate court also noted that because RH was now an adult, he was "responsible for his own wellbeing and not under [his father's] parental authority." The probate court also questioned why RH was unable to avail himself of his older brother's or maternal uncle's "assistance in Bangladesh rather than illegally entering the United States."

## C. THE PROBATE COURT'S CREDIBILITY DETERMINATION

Although we defer to the probate court on matters of credibility, *id*. at 127, we disagree with the probate court's finding that: (1) RH's testimony was not credible on the basis of it being vague, and (2) RH's affidavit was not credible on the basis of it failing to comply with court rules and containing conclusions rather than facts.

As an initial matter, the probate court erred to the extent it relied on its finding that RH entered the United States "illegally" as a justification to deny the motion. This Court has explained that "the state court is not to engage in an immigration analysis or decision," and "the final decision regarding SIJ status rests with the federal government . . . ." *Id*. at 129 (alteration in original; quotation marks and citations omitted). Specifically, in *In re Velasquez*, 344 Mich App at 141, this Court held that "the probate court's conclusion and reliance on its finding that [the subject individual] entered the United States 'illegally' was wholly improper and erroneous." In this case, the probate court focused its questioning on the nature of how RH arrived in the United States and

-4-

spent less time asking questions probative of RH's welfare. The probate court posed numerous questions to RH regarding how he afforded a plane ticket, who he traveled with, and how he knew appellant. In its opinion and order, the probate court: (1) stated that RH's entry into the United States was "illegal[]," and (2) deemed RH's testimony as not credible at least in part on the basis that he did not provide a sufficient explanation concerning how he traveled from Bangladesh to the United States. Therefore, just like the probate court in *In re Velasquez*, the probate court in this case erred to the extent that it relied on its finding that RH entered the United States "illegally" as a justification to deny the motion.

Regarding the probate court's finding that RH's testimony was vague—although RH's responses were not always clear at the hearing, likely due in part to the necessity of an interpreter, he provided a sufficient factual record for review. RH's testimony and affidavit were consistent in explaining the neglect of RH by his father and stepmother, how RH worked in dangerous conditions instead of attending school, and why RH fled Bangladesh.

Regarding the probate court's finding that RH's affidavit did not comply with MCR 2.119(B)(1)[2] and MCR 1.109(D)(3)(b)[3]— although the affidavit did not specifically state that RH

---

[2] MCR 2.119(B)(1) governs the form of affidavits and provides as follows:

> (1) If an affidavit is filed in support of or in opposition to a motion, it must:
>
> (a) be made on personal knowledge;
>
> (b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and
>
> (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

[3] MCR 1.109(D)(3)(b) governs filing standards and provides in pertinent part as follows:

> (3) Verification. Except when otherwise specifically provided by rule or statute, a document need not be verified or accompanied by an affidavit. If a document is required or permitted to be verified, it may be verified by
>
> (a) oath or affirmation of the party or of someone having knowledge of the facts stated; or
>
> (b) except as to an affidavit, including the following signed and dated declaration:
>
> "I declare under the penalties of perjury that this _____ has been examined by me and that its contents are true to the best of my information,

-5-

could testify competently to the facts stated in the affidavit, it included similar language that satisfied both rules. For example, in the affidavit, RH stated, "I swear that everything in this statement is true to the best of my knowledge." See MCR 1.109(D)(3)(b) and MCR 2.119(B)(1).

Regarding the probate court's finding that RH's affidavit was not credible because it contained mostly conclusions rather than facts—the affidavit clearly included numerous factual statements establishing abuse and neglect by RH's father and stepmother, including: (1) how exhausting and "scary" it was to work in the agricultural fields, (2) RH's stepmother's failure to intervene when his father abused him, and (3) how RH was not provided adequate food or clothing.

Therefore, the probate court clearly erred by finding that RH's testimony and affidavit were not credible on these grounds, and the record is sufficient for review.

## D. THE PROBATE COURT'S MISSING FINDINGS

The probate court abused its discretion by not making the second and third special factual findings pertinent to RH's SIJ status. See *In re Velasquez*, 344 Mich App at 118, 128-129. Nevertheless, the record is sufficient for this Court to make such findings, and we exercise our discretion to do so. See *id*. at 142; MCR 7.216(A)(7). We find by a preponderance of the evidence that: (1) RH's reunification with his father and stepmother is not viable because of abuse and neglect, and (2) RH's best interests would not be served by returning to Bangladesh.

### 1. ABUSE AND NEGLECT FINDINGS

We find by a preponderance of the evidence that RH's reunification with his father and stepmother is not viable because of abuse and neglect.

Neither "abuse" nor "neglect" are defined under the Immigration and Nationality Act of 1990, 8 USC 1101 *et seq*., or the Estates and Protected Individuals Code, MCL 700.1101 *et seq*. But, Michigan law "statutorily defines the terms 'abuse' and 'neglect' as used in various acts." *In re Velasquez*, 344 Mich App at 136. For example, Michigan's Child Protection Law, MCL 722.621 *et seq*., defines the terms "child abuse" and "child neglect" as follows:

> "Child abuse" means harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, any other person responsible for the child's health or welfare, a teacher, a teacher's aide, a member of the clergy, or an individual 18 years of age or older who is involved with a youth program. [MCL 722.622(g).]

\* \* \*

---

knowledge, and belief." Any requirement of law that a document filed with the probate court must be sworn may be also met by this declaration.

"Child neglect" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

(*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

(*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622(k).]

The Child Abuse and Neglect Prevention Act, MCL 722.601 *et seq*., also defines the terms "child abuse" and "neglect" as follows:

"Child abuse" means harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through nonaccidental physical or mental injury; sexual abuse, which includes a violation of section 145c of the Michigan penal code, 1931 PA 328, MCL 750.145c. [MCL 722.602(1)(b).]

* * *

"Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [MCL 722.602(d).]

The Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq*., defines the term "abandoned" as "left without provision for reasonable and necessary care or supervision." MCL 722.1102(a). Notably, "courts have broadly interpreted the meanings of abuse, neglect, and abandonment in SIJ status proceedings." *In re Velasquez*, 344 Mich App at 138 (quotation marks omitted).

In this case, when RH was 12 years old, he was sent to work on an agricultural farm. RH stated that he worked in the field every day, which involved harvesting and processing crops. RH was forced to "carry very heavy loads" and "work with dangerous machinery" for "many hours." RH stated that this work was "heavy," "hard," "exhausting," and "scary." RH "barely attended school." Notably, the record included reports of children in Bangladesh being "subjected to the worst forms of child labor," including agricultural work.

Additionally, RH's father and stepmother failed to provide RH with "proper" food and clothing, and RH was forced to give his wages to his father. When RH refused to go to work, or did not give his wages to his father, his father hit him in the face—this happened about seven times monthly. Notably, RH testified that his stepmother "convinced" his father to yell at, and hit him.

Considering that RH's father hit RH about seven times monthly, and that RH's stepmother "convinced" RH's father to carry out this behavior, the record supports a finding that RH was abused by his father and stepmother under MCL 722.622(g) and MCL 722.602(1)(b). Additionally, considering that RH's father and stepmother did not provide RH with adequate food or clothing, forced RH to work in dangerous conditions, and collected any of RH's earnings for themselves, the record also supports a finding that RH's father and stepmother neglected RH under MCL 722.622(k) and 722.602(d). Accordingly, reunification with RH's father and stepmother was not viable on the basis of abuse and neglect.[4] See *In re Velasquez*, 344 Mich App at 128.

## 2. BEST-INTEREST FINDINGS

We also find by a preponderance of the evidence that RH's best interests would not be served by returning to Bangladesh.

As an initial matter, we must first address the trial court's reliance on RH's age. In its opinion and order, the probate court stated that a "determination of whether the petitioner's best interests would be served by a return to their parent's country or last habitual residence is also required." But, instead of analyzing RH's best interests, the probate court simply stated that RH had recently turned 18 years old, and "as an adult, [RH] is now responsible for his own wellbeing and not under [his father's] parental authority." The probate court continued: "[RH] is now of legal employment age in Bangladesh. . . . [A]rguments against returning to Bangladesh based on forced child labor practices are moot." Notably, the record reflects that the probate court took this matter under advisement for 161 days and issued its opinion and order just two days after RH turned 18 years old. Despite this inexplicable delay, the probate court's reliance on RH turning 18 years old is irrelevant to the analysis at hand because under 8 CFR 204.11(b)(1), a petitioner is eligible for classification as a SIJ if they are "under 21 years of age at the time of filing the petition[.]"

The best-interest factors are statutorily defined under the Child Custody Act, MCL 722.21 *et seq.*, and the Michigan Adoption Code, MCL 710.21 *et seq. In re Velasquez*, 344 Mich App at 143-144. This Court has held that, "for purposes of SIJ-status findings, a court may apply the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court . . . ." *Id.* at 145 (quotation marks and citation omitted). The best-interest factors under the Child Custody Act are as follows:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

---

[4] Reunification with RH's mother was also not viable because she is deceased.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

The best-interest factors under the Michigan Adoption Code are as follows:
(*i*) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under [MCL 710.39], the putative father and the adoptee.

(*ii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(*iii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(*iv*) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(*v*) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under [MCL 710.39], the home of the putative father.

(*vi*) The moral fitness of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father.

(*vii*) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father, and of the adoptee.

(*viii*) The home, school, and community record of the adoptee.

(*ix*) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(*x*) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

(*xi*) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody. [MCL 710.22(g).]

The record established that while living in Bangladesh, RH was sent to work on a farm, where he performed strenuous tasks, operated dangerous machinery, and worked long hours instead of attending school. Additionally, for the reasons previously stated, the record supports the finding that RH was abused and neglected by his father and stepmother while living in Bangladesh. Conversely, RH now lives with appellant's family in the United States, and RH stated that appellant "takes good care of me and wants me to go to school instead of to work. I am very happy here. I want to graduate from high school and go to college." These two options present a stark contrast. Accordingly, we find that "[w]hether using the child custody factors, adoption factors, or a combination of factors," the record supports a finding it is not in RH's best interests to return to Bangladesh. See *In re Velasquez*, 344 Mich App at 146-147. Instead, it is in RH's best interests to remain in appellant's custody in the United States.

Vacated and remanded for entry of this Court's special findings regarding RH's SIJ status.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

-10-